UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re: | Case No. 04-22064 |
| ANDREW L. RENSHAW,<br>    Debtor. | Chapter 7 |
| | Adversary Proceeding No. 04-1683 |
| FAIRMONT SPECIALTY<br>INSURANCE COMPANY,<br>    Plaintiff, | Judge Arthur I. Harris |
| v. | |
| ANDREW L. RENSHAW,<br>    Defendant. | |

## MEMORANDUM OF OPINION

Before the Court is the plaintiff's unopposed motion for summary judgment (Docket #18). At issue is the dischargeability of various debts arising out of the defendant-debtor's alleged breach of a bond underwriting agreement. The plaintiff argues in its summary judgment motion that these debts are for a defalcation and are thus nondischargeable under 11 U.S.C. § 523(a)(4). For the reasons that follow, the motion for summary judgment is denied.

## FACTS AND PROCEDURAL BACKGROUND

The following facts are not in dispute. In April 1996, plaintiff Fairmont Specialty Insurance Company, Inc. ("Fairmont") and debtor Andrew Renshaw entered into a written Bail Bond Underwriting Agreement ("the Agreement").

Pursuant to the Agreement, Fairmont issued bail bonds at Renshaw's request. For some bonds, Renshaw was required to obtain collateral from the criminal defendants on whose behalf the bonds were posted. The Agreement provided that Renshaw would "hold such collateral as a fiduciary in a manner which complies with all laws and administrative regulations of this state . . . ." Renshaw was to turn collateral over to Fairmont when requested.

Renshaw also signed a Letter of Underwriting Authority ("the Letter"), which set forth certain restrictions concerning the issuance of bonds. Under the terms of the Letter, Renshaw was obligated to obtain collateral for all bail bonds issued in the amount of $5,000 or more. The collateral was to fully secure the bond. The Letter provided that "[a]ll collateral taken, be it cash, personal property or of any other nature, must be handled with strict adherence to regulations and rules relating to fiduciary assets."

In addition to the collateral requirements, the Agreement and the Letter obligated Renshaw to, *inter alia*:

- pay "premiums" to Fairmont within 15 days of executing a bond;
- fully indemnify Fairmont for any forfeited bonds;
- make regular payments to an indemnity fund;
- file reports with Fairmont on the status of all bonds posted;

2

- return any unused "powers of attorney" to Fairmont upon request.

Fairmont has alleged that Renshaw breached all of these obligations. In 2001, Renshaw and Fairmont executed a promissory note in the amount of $411,000, which evidenced certain indemnification losses and premium payments owed to Fairmont by Renshaw.

Renshaw filed his Chapter 7 petition on September 21, 2004. Fairmont commenced this adversary proceeding on December 22, 2004, to determine the dischargeability of debts owed to Fairmont for Renshaw's various breaches of the Agreement and Letter. As a result of these alleged breaches, Fairmont claims resulting losses in excess of $1.6 million as follows:

- $90,380.24 for principal remaining due under the 2001 promissory note;

- $489,875.16 for "additional losses" for Renshaw's alleged violations of his contractual and statutory duties;

- $128,255.59 for unpaid premiums;

- $161,879.81 for legal expenses;

- $66,068.16 for "unpaid premiums regarding unreported and returned powers [of attorney];"

- $741,260.00 for contingent liability on bonds posted by Renshaw but not yet exonerated.

Fairmont argues that all of those damages result from an alleged defalcation.

3

After several months of negotiations and discovery, Fairmont presented Renshaw with requests for admissions on August 12, 2005. Renshaw did not respond or request an extension of time, and on September 14, 2005, Fairmont moved for an order deeming the requested admissions admitted against Renshaw. The motion was unopposed and was granted on October 14, 2005. Fairmont moved for summary judgment on October 13, 2005. Although Fairmont asserts multiple theories of nondischargeability in its complaint, it bases its summary judgment motion solely on defalcation under 11 U.S.C. § 523(a)(4). Docket #11 at n. 4. Renshaw did not oppose the motion, and the Court is now ready to rule.

## JURISDICTION

Determinations of dischargeability are core proceedings under 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), as made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment:

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997); *see, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the nonmoving party. *See Tennessee Dep't. of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

## DEFALCATION

Section 523 of the Bankruptcy Code provides in pertinent part:

5

> (a) A discharge under section 727 . . . of this title does not discharge an individual from any debt—
>
> . . . .
>
> (4) for . . . defalcation while acting in a fiduciary capacity . . . .

A defalcation under subsection 523(a)(4) requires: "(1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005). For purposes of subsection 523(a)(4), a defalcation is limited to "only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor. Defalcation then occurs through the misappropriations or failure to properly account for *those* trust funds." *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997) (emphasis added).

In order to establish the existence of an express or technical trust, the creditor must show: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *Id.* In the present case, Fairmont attempts to establish a fiduciary relationship on the basis of the Agreement and the Letter. Specifically, Fairmont cites the requirements that Renshaw obtain collateral as security for bonds issued in amounts greater than $5,000 and hold that collateral in trust and for the benefit of Fairmont. Fairmont argues that Renshaw's failure to turnover any collateral constitutes a defalcation under subsection 523(a)(4).

6

The Court agrees that the Agreement and the Letter establish an intent to create a trust, a trustee, and a definite beneficiary. Fairmont has failed to show that Renshaw actually obtained any collateral. In other words, Fairmont has only shown that a specific res should have been placed in Renshaw's hands, but Fairmont has not shown that any specific res was, in fact, placed in Renshaw's hands. Absent this showing, Fairmont has not established the requisite fiduciary relationship necessary to give rise to a defalcation. *See In re Krizanic*, 255 B.R. 688, 692 (Bankr. E.D. Mich. 2000) ("In the case before us, there is no 'specific res in the hands of the debtor,' and for that reason there is no express trust. There being no express trust, there is no defalcation."); *see also Graffice v. Grimm (In re Grimm)*, 293 B.R. 156, 167 (Bankr. N.D. Ohio 2003) (noting that because debtor had never obtained control of alleged trust funds, court could not find a trust under subsection 523(a)(4)); *In re Lusk*, 208 B.R. 304 (Bankr. E.D. Tenn. 2004) (same).

The Court also notes that, even if a defalcation occurred with respect to any collateral actually obtained by Renshaw, Fairmont has not presented sufficient evidence to support a finding that all of the $1.6 million of debts owed by Renshaw are "resulting losses" and thus nondischargeable. Subsection 523(a)(4) applies "to trustees who misappropriate funds held in trust and not to those who fail to meet an obligation under a common law fiduciary relationship." *In re*

7

*Blaszak*, 397 F.3d at 391. Losses claimed by Fairmont appear to be for alleged breaches of Renshaw's duties under the Agreement, but a breach of contract is not a defalcation for purposes of subsection 523(a)(4). Thus, Fairmont is not entitled to judgment as matter of law, and its motion for summary judgment is denied.

CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied. There are disputed material facts whether a specific res came into the defendant-debtor's hands. The Court will issue an amended trial scheduling order.

IT IS SO ORDERED.

Arthur I. Harris
United States Bankruptcy Judge